Case 5:19-cv-00162 Document 17 Filed on 02/02/21 in TXSD Page 1 of 16

United States District Court
Southern District of Texas

**ENTERED**
February 02, 2021
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# LAREDO DIVISION

| | | |
|---|---|---|
| **EDWARDO ELIZONDO,** § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| V. § | | **CIVIL ACTION NO. 5:19-CV-162** |
| § | | |
| **ANDREW SAUL, Commissioner of the** § | | |
| **Social Security Administration,** § | | |
| § | | |
| Defendant. § | | |

## REPORT AND RECOMMENDATION

Before the Court is Plaintiff Edwardo Elizondo's and Defendant Andrew Saul's[1] cross motions for summary judgment. (Dkt. Nos. 9, 12).[2] Plaintiff brings this action for judicial review of the Commissioner of the Social Security Administration's (the "Commissioner") final decision denying his claims for disability insurance benefits and supplemental payments under Titles II and XVIII of the Social Security Act. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); (Dkt. No. 1). For the reasons set forth below, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 9), **GRANT** Defendant's Cross Motion for Summary Judgment (Dkt. No. 12), and thereby **AFFIRM** the Commissioner's decision.

## I. Introduction

On August 22, 2013, Plaintiff filed an application for a period of disability and disability benefits under Title II and Title XVIII of the Social Security Act. (Dkt. No. 5-6 at 2).[3] In amendments to the application, Plaintiff stated that he became unable to work because of his disabling condition on January 30, 2009. (*Id.*). On December 4, 2013, the

---

[1] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

[2] For purposes of reference, "Dkt. No." indicates a citation to the record in Civil Action No. 5:19-CV-162. "Civ. Dkt. No." indicates a citation to the record in Plaintiff's original matter brought before the Court, Civil Action No. 5:16-CV-264.

[3] When citing to the page numbers of any document in the record, the Court will cite to the page numbering of the Court's internal CM/ECF docket system, and not to the page numbers in the underlying documents.

Commissioner denied Plaintiff's claim for benefits. (Dkt. No. 5-5 at 5). Plaintiff filed a Request for Reconsideration on January 29, 2014. (*Id.* at 13). On April 7, 2014, upon reconsideration, the Commissioner again denied Plaintiff's claim. (*Id.* at 10). Plaintiff filed a request for a hearing on May 30, 2014. (*Id.* at 14). On June 24, 2014, an administrative law judge ("ALJ") approved the request for a hearing. (*Id.* at 15).

Plaintiff appeared and testified at an administrative hearing in front of ALJ Gordon Momcilovic in San Antonio, Texas on April 6, 2016. (Dkt. No. 5-3 at 20). An impartial vocational expert also testified at the hearing. (*Id.*). On April 20, 2016, the ALJ issued an unfavorable Notice of Decision denying Plaintiff's claim for disability benefits. (*Id.* at 17). The ALJ found that Plaintiff did not have a disability, as defined in the Social Security Act ("SSA"), between the alleged onset date, January 30, 2009, and the date last insured, December 31, 2010. (*Id.* at 35). On May 24, 2016, Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council. (*Id.* at 11). The Appeals Council denied Plaintiff's request to review the ALJ's decision on July 8, 2016. (*Id.* at 2).

Plaintiff subsequently filed a timely civil action in federal court, seeking review of the Commissioner's decision. (Civ. Dkt. No. 1). On March 23, 2018, the district judge issued an order vacating the Commissioner's decision and remanding the matter to the ALJ, specifically for analysis of the opinions of two treating sources and for reevaluation of Plaintiff's residual functioning capacity (RFC) in light of the reconsidered evidence. (Civ. Dkt. No. 16).

On August 9, 2018, the Appeals Council issued an order remanding the matter to an ALJ for a decision on Plaintiff's claims. (Dkt. No. 5-41 at 66). ALJ Momcilovic held a second administrative hearing on Plaintiff's claims on May 16, 2019. (Dkt. No. 5-40 at 44). On May 29, 2019, the ALJ issued an unfavorable Notice of Decision denying Plaintiff's claim for disability benefits. (*Id.* at 14). The ALJ again found that Plaintiff did not have a disability, as defined in the Social Security Act ("SSA"), between the alleged onset date, January 30, 2009, and the date last insured, December 31, 2010. (*Id.* at 34). On June 6, 2019, Plaintiff appealed the ALJ's decision to the Social Security Administration's Appeals Council. (Dkt. No. 5-42 at 31). On October 4, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (Dkt. No. 5-40 at 2).

The ALJ's decision represents the Commissioner's final decision in Plaintiff's case.

*See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000) ("SSA regulations provide that, if … the [Appeals] Council denied the request for review, the ALJ's opinion becomes the final decision."). Following the Appeals Council's denial, Plaintiff filed this action pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1). Plaintiff subsequently filed a Motion for Summary Judgment in this matter. (Dkt. No. 9). Defendant responded by filing a Cross Motion for Summary Judgment. (Dkt. No. 12).

## II. Legal Standard

Summary judgment is proper when the record reflects that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When parties file cross-motions for summary judgment, we review 'each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.'" *Cooley v. Hous. Auth. of City of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014) (quoting *Ford Motor Co. v. Tex. Dep't of Transp.*, 264 F.3d 493, 498 (5th Cir. 2001)).

The Court's review of a final decision of the Commissioner on a social security disability claim is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Our review of Social Security disability cases 'is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard.'" *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). When the Commissioner's decision is reached by applying improper legal standards, the decision is not supported by substantial evidence. *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive." *Heck v. Colvin*, 674 F. App'x 411, 413 (5th Cir. 2017) (quoting *Taylor*, 706 F.3d at 602) (internal quotations omitted). The Court "may not reweigh the evidence . . ., nor try the issues *de novo*, nor substitute [its] judgment for that of the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Johnson v.*

*Colvin*, 595 F. App'x 443, 444 (5th Cir. 2015) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)).

### III. Discussion

"A claimant bears the burden of proving that he or she suffers from a disability." *Perez*, 415 F.3d at 461. The Social Security Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Substantial gainful activity means "work activity involving significant physical or mental abilities for pay or profit." *Perez*, 415 F.3d at 461 (quoting *Newton*, 209 F.3d at 452).

In considering a disability claim, an ALJ must conduct a five-step evaluation that examines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from doing any other work. *Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002) (citing 20 C.F.R. § 404.1520). While the claimant maintains the burden of proof for the first four steps, the burden shifts to "the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy." *Perez*, 415 F.3d at 461. "Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Id.* (quoting *Newton*, 209 F.3d at 453) (internal quotations omitted).

"A finding that a claimant is disabled . . . at any point in the five-step review is conclusive and terminates the analysis." *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). However, if no such finding can be made at any one step, the Commissioner moves on to the next step. 20 C.F.R. § 404.1520(a). Before moving from step three to step four, the Commissioner determines the claimant's residual functional capacity ("RFC"), which is "a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez*, 415 F.3d

at 462 (citing 20 C.F.R. § 404.1545(a)(1)). The Commissioner uses the claimant's RFC at steps four and five to determine if the claimant can still do his past relevant work and determines whether the claimant can adjust to any other type of work. *Id*. (citing 20 C.F.R. § 404.1520(e)).

Here, the ALJ addressed all five steps of the sequential process. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 30, 2009, the alleged onset date, through December 31, 2010, Defendant's date last insured. (Dkt. No. 5-40 at 19). At step two, the ALJ found that Plaintiff suffered from the following severe impairments through the date last insured: a major depressive disorder/an unspecified bipolar disorder, an unspecified anxiety disorder/post-traumatic stress disorder/a panic disorder with agoraphobia, and a borderline personality disorder. (*Id*. at 20). At step three, the ALJ found that Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (*Id*.). At step four, the ALJ assessed Plaintiff's RFC and found that Plaintiff could perform a full range of work at all exertional levels except that Plaintiff can never interact with the general public, although he can occasionally interact with supervisors and coworkers. (*Id*. at 22). At step five, the ALJ determined that through the date last insured, the Plaintiff was capable of performing past relevant work as a driver, as a quality control worker, as a warehouse worker, and as an assembler. (*Id*. at 34). The ALJ found that this work did not require the performance of work-related activities precluded by the Plaintiff's identified impairments. (*Id*.). As such, the ALJ concluded that Plaintiff was not disabled for purposes of the Social Security Act between the relevant period of January 30, 2009 to December 31, 2010. (*Id*.).

Plaintiff moves to reverse or remand the ALJ's decision based on three issues. (Dkt. No. 10). First, Plaintiff argues that the ALJ failed to properly weigh the medical opinion evidence of two treating sources. (*Id*. at 7). Second, and relatedly, Plaintiff argues that the ALJ failed to properly determine Plaintiff's RFC. (*Id*.). Finally, Plaintiff argues that the ALJ failed to properly evaluate Plaintiff's subjective statements. (*Id*.). Conversely, Defendant argues that the ALJ's decision should be upheld because the ALJ properly weighed the relevant evidence, and substantial evidence supports both the

ALJ's RFC assessment and the ALJ's final determination that Plaintiff was not disabled during the relevant period. (Dkt. No. 13).

### A. The ALJ properly weighed the opinions of Dr. Guerra and Dr. Vasquez

Plaintiff's first argument is that the ALJ failed to properly weigh the medical opinion evidence. (Dkt. No. 10 at 8). Specifically, Plaintiff contends that the ALJ did not give proper weight to the evidence provided by treating sources—Dr. Ian Luis Guerra, M.D., and Dr. Desi A. Vasquez, Ph.D. (*Id*. at 12). The opinion of the treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000). A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with ... other substantial evidence." *Id*. (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)); 20 C.F.R. § 404.1527(d)(2). When determining that a treating source's opinion should not be granted controlling weight, the ALJ must perform a "detailed analysis" of the opinion using the following factors:

> (1) the length of the treatment relationship and frequency of examination;
> (2) the "nature and extent" of the treatment relationship;
> (3) how well-supported the opinion is;
> (4) how consistent the opinion is with the record as a whole;
> (5) whether the opinion comes from a specialist in the relevant field; and
> (6) "other factors" that "tend to support or contradict" the opinion.

*See* 20 C.F.R. § 404.1527(d)(2). The ALJ's assessment of the opinions of each of the treating sources in question is discussed below.

### 1. Dr. Guerra's opinion

In his decision, the ALJ specifically considered the opinion of Dr. Guerra. (Dkt. No. 5-40 at 31). The ALJ noted that Dr. Guerra has been treating Plaintiff for PTSD, pain disorder, and major depressive disorder since March 4, 2015. (*Id*.). The ALJ acknowledged that Dr. Guerra was a treating source for Plaintiff. (*Id*.). However, the ALJ held that "it remains unknown how … the doctor could make such sweeping and definitive statements as to the existence of such extreme and pervasive work-related

limitations dating back six and one-half years given that he admittedly only began treating the claimant on March 24, 2015." (*Id*.). The ALJ found that the treatment relationship between Dr. Guerra and Plaintiff did not extend to the time in question. (Id.). Additionally, the evidence dating to the time in question, including examinations and records from treating physicians from the pertinent time period, was at odds with Dr. Guerra's assessment of Plaintiff's capabilities. (*Id*.). The ALJ noted that doctors who treated Plaintiff during the relevant period often found that Plaintiff had euthymic mood and intact attention and concentration. (*Id*.). This, the ALJ found, was inconsistent with Dr. Guerra's opinions. (*Id*.). The ALJ also noted that Plaintiff's ability to handle his legal and financial affairs as well as travel to and from Mexico during and after the relevant period is inconsistent with Dr. Guerra's findings. (*Id*.). In summary, the ALJ held that:

> "[g]iven that the doctor's opinions exceed the limited amount and type of abnormal objective findings in evidence dating to the time at issue, the doctor's treatment of the claimant began long after the time at issue ended, the opinions are also inconsistent with the claimant's functioning during the time at issue continuing to the present, and it appears the doctor's opinions are predicated, at least in part, on the claimant's subjective statements to the doctor about the claimant's own history, symptoms and abilities, Dr. Guerra's opinions are not entitled to controlling weight and were given little weight in determining the claimant's residual functioning capacity for the period and issue through the date last insured."

(*Id*.).

Plaintiff argues that the ALJ gave the same reasoning for discounting the opinions of Dr. Guerra in his first decision, which was reversed and remanded by the District Court. (Dkt. No. 10 at 12). However, the Court does not agree. In his first decision, the ALJ did not mention nor consider the opinions of Dr. Guerra. (*See* Dkt. No. 5-3 at 20–35). The District Court previously reversed the ALJ's decision specifically because he did not give controlling weight to Dr. Guerra's opinion nor provided a "detailed analysis" of the opinion, thus not comporting with the proper legal standard. (Civ. Dkt. No. 16 at 14–15). In his subsequent decision in this matter, the ALJ specifically explained why he was giving little weight to Dr. Guerra's opinion, discussing the nature and extent of the treatment relationship, how well-supported the opinion is, and inconsistencies between the opinion and the record as a whole. Therefore, the ALJ did not provide the same reasoning for discounting Dr. Guerra's opinion as his first determination of non-

disability.

Plaintiff next argues that the opinions of Dr. Guerra are uncontradicted by any evidence relating to the relevant period, let alone substantial evidence, and thus it should be given controlling weight. (Dkt. No. 10 at 18). However, the Court does not agree. The record supports, and the ALJ noted in his decision, that Dr. Adair reported after conducting three mental status examinations in 2009 that Plaintiff's attention and concentration were "intact." (Dkt. No. 5-14 at 58, 75, & 87). Additionally, various doctors, discussed in detail in the ALJ's decision, described Plaintiff's thought process as logical, goal directed, coherent, and linear. (Dkt. No. 5-3 at 28–31). Dr. Funmilayo found after administering a mental status examination in September 2009 that Plaintiff's long-term memory, short-term memory, and immediate-recall memory were all intact. (Dkt. No. 5-15 at 60). While these treating source opinions from the relevant period do not contradict all of Dr. Guerra's opinions, they are inconsistent with many of his opinions on Plaintiff's mental capacity. Thus, because the ALJ provided a detailed analysis as to why he was declining to give Dr. Guerra's opinion controlling weight, specifically referencing the inconsistencies between Dr. Guerra's opinion and other medical opinions on the record, the ALJ was not required to give Dr. Guerra's opinion controlling weight.

Finally, Plaintiff argues that even if the evidence did not require the ALJ to give controlling weight to Dr. Guerra's opinion, treating medical opinions are still ordinarily entitled to deference even when they are not controlling. Plaintiff additionally argues here that the ALJ did not properly weigh the relevant regulatory factors provided in 20 C.F.R. § 404.1527. In his decision, the ALJ discussed the length of the treatment between Plaintiff and Dr. Guerra, the nature and the extent of the treatment, the determination that the opinion is not well-supported by the record as a whole, the determination that the record is not consistent with other medical opinions on the record, and Dr. Guerra's specialization. (Dkt. No. 5-40 at 31). Thus, the ALJ did discuss the relevant factors before coming to his conclusion that Dr. Guerra's opinion should neither be granted controlling weight nor be given much weight at all. (*Id.*). Additionally, while a treating source's opinion is relevant, "'[t]he treating physician's opinions are far from conclusive' ... [and] [f]or good cause shown, the ALJ may discount, or even disregard entirely, the opinion of the treating physician." *Jones v. Colvin*, 638 Fed. Appx. 300, 304 (5th Cir. 2016) (citing

*Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir.1999) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994))). Rather, "the ALJ has sole responsibility for determining a claimant's disability status." *Martinez*, 64 F.3d at 176.

Because the ALJ provided a "detailed analysis" using the regulatory factors outlined in 20 C.F.R. § 404.1527(c) to determine that Dr. Guerra's opinion did not have controlling weight and instead should be granted little weight, the ALJ did not apply an incorrect legal standard when evaluating the opinions of Dr. Guerra as a treating source.

### 2. Dr. Vasquez's opinion

In his decision, the ALJ specifically discussed the opinions of Dr. Vasquez. (Dkt. No. 5-40 at 32). The ALJ noted that Dr. Vasquez, a psychologist, treated Plaintiff between 2013 and 2015 and that he submitted an assessment form on July 10, 2013. (*Id.*). The ALJ discussed some of Dr. Vasquez's opinions, including a comment that Plaintiff might experience decompensation in any public setting. (*Id.*). The ALJ also noted that Dr. Vasquez indicated that the symptoms only existed since March 22, 2010. (*Id.*).

In his analysis of Dr. Vasquez's opinions, the ALJ noted that the limitations asserted in Dr. Vasquez's form exceed the limited amount, type, and scope of abnormal findings reflected in treatment records dating prior to the date last insured, including the repeated notations of euthymic mood, intact attention and concentration, and logical and goal directed thoughts on examinations dated during the relevant period. (Id.). The ALJ noted that Dr. Vasquez's assessments are at odds with the Plaintiff's noted level of daily activities and social functioning during the relevant period. (*Id.*). The ALJ further noted that it seems that Dr. Vasquez was swayed to an extent by Plaintiff's subjective statements with respect to the opinions regarding decompensation and frequent absences in a work environment, something that the ALJ stated was "simply not substantiated by the evidence of record." (*Id.*). In summary, the ALJ held that:

> [g]iven that Dr. Vasquez's opinions are not consistent with the objective findings and are inconsistent with other evidence of record, they are not entitled to controlling weight and were given little weight in determining the findings herein."

(*Id.*).

Plaintiff's arguments that the ALJ improperly weighed Dr. Vasquez's opinion are similar to Plaintiff's arguments surrounding Dr. Guerra's opinion. And for the same

reasoning, Plaintiff's arguments as to Dr. Vasquez's opinion also fail. On remand, the ALJ specifically addressed Dr. Vasquez's opinion, and he provided a detailed analysis of the appropriate regulatory factors explaining why he was not giving the opinion controlling weight and was in fact giving it little weight. Therefore, the ALJ applied the appropriate legal standard to his decision to not give controlling weight to Dr. Vasquez's opinion, and the Court will not disturb the ALJ's discretion in assessing the weight of treating sources.

### B. The ALJ's RFC determination is supported by substantial evidence

Plaintiff next argues that the ALJ improperly determined his RFC, primarily because the ALJ failed to properly weigh the opinions of Dr. Guerra and Dr. Vasquez. (Dkt. No. 10 at 19). The Court has already discussed *supra* why it does not agree that the ALJ improperly weighed the opinions of Dr. Guerra and Dr. Vasquez. In his decision, the ALJ found that Plaintiff "had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can never interact with the general public but he can occasionally interact with supervisors and coworkers." (Dkt. No. 5-40 at 22). Plaintiff asserts that "after having discounting the opinions from ever medical source in the record, the ALJ failed to identify any evidence, let alone substantial evidence, which supports this mental RFC finding." (Dkt. No. 10 at 19). The Court disagrees. The ALJ discussed at length in his decision a series of reports from Plaintiff's various meetings with medical professionals during the relevant period. (Dkt. No. 5-40 at 22–31). The ALJ also considered Plaintiff's subjective statements throughout this portion of the decision. (*Id.*). Additionally, the ALJ discussed the opinions of Dr. Guerra and Dr. Vasquez, as he was ordered to do on remand, and applied the proper legal standard when determining that these opinions should not be given controlling weight. (*Id.* at 31–32).

Plaintiff argues that the ALJ did not include a narration of any specific medical facts or even persuasive non-medical evidence that supports the mental RFC determination for Plaintiff. But again, the Court cannot agree. The ALJ's decision was detailed. The ALJ first discussed Plaintiff's testimony at the initial hearing, followed by his testimony at the subsequent hearing on remand. (*Id.* at 23). The ALJ discussed findings from meetings Plaintiff had with Dr. Gonzalo Perez-Garcia, Dr. Kamal Hirani,

Dr. Candice Adair, Dr. Rachel Funmulayo, and Dr. Arash Moghaddam, as well as nurses and social workers, all during the relevant period. (*Id.* at 22–31). The Court finds that the ALJ did provide a sufficient narrative discussion describing how the evidence supports his RFC conclusion, as required by the Commissioner's policy ruling.

The determination of a claimant's RFC is the sole responsibility of the ALJ. *Taylor v. Astrue*, 706 F.3d 600, 602–03 (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995)). The Court finds that the ALJ's determination of Plaintiff's RFC, based on the ALJ's extensive and articulated narrative of the evidence on record, is supported by substantial evidence.

### C. The ALJ properly evaluated Plaintiff's subjective statements

Plaintiff's final argument is that the ALJ failed to properly evaluate Plaintiff's subjective statements. (Dkt. No. 10 at 21). Plaintiff presents multiple arguments to support the assertion that the ALJ's evaluation of Plaintiff's subjective statements is not supported by substantial evidence.

The law requires the ALJ to make affirmative findings regarding a plaintiff's subjective statements. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir. 1981)). The subjective statements must be considered along with the medical evidence in determining the individual's work capacity. *See Ripley v. Chater*, 67 F.3d 552, 556 (5th Cir. 1995). It is well settled that an ALJ's determination of the credibility of a plaintiff's subjective statements is entitled to deference. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001). The Fifth Circuit recognizes that "the ALJ is best positioned" to make these determinations because of the opportunity to observe the plaintiff first-hand. *See Falco*, 27 F.3d at 164 n.18. Moreover, "[t]he Act, regulations and case law mandate that the [Commissioner] require that subjective complaints be corroborated, at least in part, by objective medical findings." *Harrell v. Bowen*, 862 F.2d 471, 481 (5th Cir.1988) (citing 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529).

In this matter, the ALJ's decision reveals that the ALJ did consider the subjective statements made by Plaintiff at the administrative hearing. (Dkt. No. 5-40 at 30–31). The ALJ found that, after considering various statements made by Plaintiff throughout the evidence of record, the statements were "inconsistent with total disability." (*Id.* at

30). The ALJ cited pieces of Plaintiff's testimony that the ALJ found to be inconsistent with a finding of total disability, including that the Plaintiff admitted to being able to frequently travel to Mexico during the relevant period, to residing with and caring for a long-term romantic partner, to selling items on the internet for profit and working intermittently in the spring of 2009, and to being able to complete basic tasks like doing laundry and operating a motor vehicle. (*Id.* at 30–31). The ALJ found that Plaintiff's acknowledged ability to complete these activities indicated that Plaintiff had the requisite capabilities for work conforming to the Plaintiff's RFC prior to December 31, 2010. (*Id.* at 31).

Plaintiff first argues that the ALJ erred by relying heavily on Plaintiff's limited activities of daily living to find that Plaintiff is not mentally disabled. (Dkt. No. 10 at 23). Plaintiff points out that, pursuant to the Commissioner's Regulations, the ALJ cannot reject subjective statements about pain or symptoms, or the effect of such symptoms on a claimant's ability to work, "solely because the available objective medical evidence does not substantiate [claimant's] statements." 20 C.F.R. § 404.1529(c)(2). However, that is not what the ALJ did here.

The ALJ explicitly considered various statements made by Plaintiff throughout the administrative hearing. (Dkt. No. 5-40 at 30). The ALJ noted that Plaintiff reported daily panic attacks that could persist for up to thirty minutes. (*Id.* at 23). Plaintiff stated that he experienced daily "flash backs" to his time in the military and explained that he feared others would harm him. (*Id.*). Plaintiff also admitted to working as a pet groomer during the relevant period, and that he quit his job as a pet groomer "because he did not like criticism." (*Id.*). The ALJ found that, based on Plaintiff's testimony, the medically determinable impairments could cause some of the alleged symptoms. (*Id.*). However, Plaintiff's statements concerning the intensity, persistence and limiting effects of the symptoms were not entirely consistent with the objective medical evidence or the other evidence in the record. (*Id.*). The ALJ went on to detail the reports of various medical professionals who met with Plaintiff during the relevant period. (*Id.* at 23–30). The ALJ explained that Plaintiff's statements about the intensity, persistence and limiting effects of his symptoms were inconsistent. Plaintiff's characterization not only exceeded the limited amount and type of abnormal findings sustained upon review of the record, but

they also failed to account for the positive effects of treatment in mitigating Plaintiff's condition. (*Id.* at 30). It is within the ALJ's discretion to give less weight to Plaintiff's statements regarding his symptoms based on a review of the objective medical record and consideration of Plaintiff's daily activities. *See Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1989). The ALJ expressly considered Plaintiff's subjective statements as required by 20 C.F.R. § 404.1529 and gave them the appropriate weight. The ALJ's reliance on Plaintiff's admitted daily activity during the relevant time period was not inappropriate.

Plaintiff next argues that the ALJ erred by focusing on evidence that Plaintiff was non-compliant with treatment and had some response to treatment. (Dkt. No. 10 at 24). The Court first notes that pursuant to the Commissioner's regulations, if a claimant does not follow the prescribed treatment plan without a good reason, the Commissioner will not find the claimant disabled. 20 C.F.R. § 404.1530(b). The ALJ noted in his decision that records during the relevant period indicated Plaintiff would discontinue medications or drop dosages of his medications on his own initiative. (Dkt. No. 5-40 at 30). Additionally, the ALJ noted that Plaintiff's alcohol consumption during the relevant period constituted noncompliance with prescribed treatment. (*Id.*). The ALJ expressly noted that Plaintiff admitted to a treating psychotherapist on May 11, 2009 that he was drinking alcohol "from morning to night." (*Id.* at 26). Additionally, the ALJ noted a medical notation from a treating physician at a January 25, 2010 visit which stated that Plaintiff "believes a lot of his anxiety and panic attacks [were] due to the heavy drinking and subsequent physical symptoms from the pancreatitis." (*Id.* at 28).

Plaintiff argues that he should not be faulted for periods of non-compliance with treatment when his non-compliance was due to his disabling psychiatric condition. (Dkt. No. 10 at 24–25). However, the ALJ expressly found that the medical record indicated that Plaintiff would have periods of non-compliance "on his own initiative." (Dkt. No. 5-40 at 30). "A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility." *Robinson v. Astrue*, 2010 WL 2606325, at *8 (S.D. Tex. June 28, 2010) (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir.1990)). Here, it was proper for the ALJ to consider the Plaintiff's non-compliance with treatment during portions of the relevant period in assessing Plaintiff's subjective statements. The Court will not disturb the weight that the ALJ gave that assessment in determining non-

disability.

As to Plaintiff's argument that the ALJ erred by focusing on evidence that Plaintiff had positive responses to treatment during the relevant period, the Court does not find that the ALJ's consideration of improvement discredits his evaluation of Plaintiff's subjective statements. Plaintiff cites the Ninth Circuit case *Ghanim v. Calvin*, which held that treatment records reflecting improvement "must be viewed in light of the overall diagnostic record." 763 F.3d 1154, 1164 (9th Cir. 2014). The ALJ found that Plaintiff's subjective statements were inconsistent because they failed to account for the positive effects of treatment in ameliorating Plaintiff's condition. (Dkt. No. 5-40 at 30). The Court first notes that a finding of medical improvement related to a claimant's ability to work is appropriate grounds for the Commissioner to terminate disability benefits. *See* 42 U.S.C. § 423(f)(1); 20 C.F.R. § 404.1594(f). However, in this matter, the ALJ did not, nor was he asked to, determine whether or not Plaintiff experienced substantial medical improvement during the relevant period. The ALJ expressly considered the entire record, including Plaintiff's subjective statements, in making his finding of non-disability. The ALJ found that Plaintiff's subjective statements were inconsistent, in part, because they failed to account for the positive effects of treatment during the relevant period. (Dkt. No. 5-40 at 30). In his decision, the ALJ noted multiple points where Plaintiff indicated to his treating sources an improved mood or general improvement in Plaintiff's mental health. On February 2, 2009, Plaintiff indicated to his doctor that "things are going a lot better" and that "he feels great." (*Id*. at 24). On March 9, 2009, Plaintiff reported that "things are going good" and that he had started working as a pet groomer the week prior and liked the job. (*Id*. at 25). Insofar as the ALJ's decision lessens Plaintiff's credibility based on inconsistencies with the medical record, the Court will not disturb the ALJ's findings.

Plaintiff further argues that the ALJ erred by discrediting Plaintiff's allegations because Plaintiff was never psychiatrically hospitalized. (Dkt. No. 10 at 26). However, upon review of the ALJ's decision, the ALJ did not indicate that he discredited Plaintiff's subjective statements because Plaintiff was never psychiatrically hospitalized. Plaintiff does not cite to a point in the record or the ALJ's decision that reflects this allegation. Thus, because there is no indication that the ALJ's determination of credibility of

Plaintiff's subjective statements was impacted by Plaintiff's lack of psychiatric hospitalization, Plaintiff's argument has no merit.

Finally, Plaintiff argues that the ALJ erred by criticizing Plaintiff's treatment as "conservative." (Dkt. No. 10 at 25). The ALJ found that while Plaintiff had impairments prior to December 31, 2010, the record reflects fairly routine and conservative mental health care and no requirement for more intensive or involved care. (Dkt. No. 5-40 at 30). A medical condition that can reasonably be remedied by appropriate treatment is not disabling. *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986). However, the Court need only consider here whether the ALJ's credibility assessment of Plaintiff's subjective statements is supported by substantial evidence. The ALJ, in considering the "routine and conservative" mental health care that Plaintiff received, did so only to point out any inconsistencies between Plaintiff's subjective statements and the amount and type of abnormal findings reflected in a review of the objective medical record. (Dkt. No. 5-40 at 30). The Court will not disturb the weight that the ALJ gave to this inconsistency in determining non-disability.

Credibility determinations are generally entitled to great deference. *Robinson*, 2010 WL 2606325, at *8. In this case, the Court finds that there is substantial evidence to support the ALJ's credibility assessment, and the ALJ clearly articulated his assessment in the report. The credibility determination was the ALJ's role, and the Court will not disturb that finding. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir.2002).

## IV. Conclusion

The Court finds that the ALJ applied the correct legal standard in his decision, and that his decision was supported by substantial evidence. For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DENY** Plaintiff's Motion for Summary Judgment (Dkt. No. 9), **GRANT** Defendant's Cross Motion for Summary Judgment (Dkt. No. 12), and thereby **AFFIRM** the Commissioner's decision.

## V. Notice of Right to Object

Within fourteen days after being served with a copy of this Report and Recommendation, the parties may file written objections to the findings and recommendations proposed above. 28 U.S.C. § 636(b)(1). The District Judge will review

de novo those portions of the Report or specified proposed findings or recommendations to which the party objects. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150–53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996). The District Judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by this Court, and may also receive further evidence or recommit the matter to this Court with instructions. 28 U.S.C. § 636(b)(1)(C). The District Court need not consider frivolous, conclusive, or general objections. *Battle v. U.S. Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). If a party does not object within fourteen days, the party forfeits its right to District Court review. *Thomas*, 474 U.S. at 150.

Failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after service shall bar an aggrieved party from de novo review by the District Court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the District Court, except on grounds of plain error or manifest injustice. *Douglass*, 79 F.3d at 1428.

**SIGNED** on February 2, 2021.

_____
John A. Kazen
United States Magistrate Judge